NORRIS, APPELLANT, *v.* STATE TEACHERS RETIREMENT SYSTEM OF OHIO ET AL., APPELLEES.

(No. 51801—Decided March 9, 1987.)

*Owen J. McCafferty* and *Robert Steely,* for appellant Aubrey B. Norris.

*Joseph C. Domiano,* for appellee Maple Heights School Board.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard A. Green,* for appellee State Teachers Retirement System of Ohio.

MARKUS, C.J. A retired school superintendent seeks a declaration that the State Teachers Retirement System ("STRS") understated her "final average salary" in determining her pension. More specifically, the retiree complains that STRS refused to consider a lump sum retroactive pay raise she received for the ten months preceding her retirement. The trial court granted summary judgment for STRS, holding that the challenged compensation was "terminal pay" which former R.C. 3307.51 explicitly excludes from pension calculations. The evidentiary material did not preclude a contrary finding, so we reverse.

## I

Evidentiary materials established the following circumstances of the superintendent's employment by this school system. The school board contracted for her services for three years in 1974, and for another three years in 1977. The 1977 contract provided for annual renewals after 1979-1980, unless either party gave timely notice of an intent to terminate their agreement. The board accepted the first annual renewal for 1980-1981 and continued her 1979-1980 salary of approximately $3,666 per month. Prior to that time, she had received five salary increases ranging from three percent to eleven percent. During her entire employment by this school system she was a contributing member of the STRS.

On June 24, 1981, the superintendent and the board negotiated a written agreement to terminate her employment on June 30, 1981. The superintendent thereby agreed to retire two months before her contract expired. The board agreed to pay her a lump sum retroactive salary increase on June 30, 1981 for the preceding ten months at $1,400 per month. The superintendent agreed to waive all other "claims or rights arising from her employment," including "compensatory time and unused vacation leave." Before executing this agreement, the board contracted with her replacement to begin work as a consultant on July 1, 1981.

The school board deducted the employee's proportionate pension contribution from that lump sum payment and tendered it to STRS. STRS refused to accept that contribution, claiming that the lump sum payment was not "earned compensation" within the meaning of the state teachers' pension laws. The superintendent disagreed and brought this action to compel STRS to include that contribution when it calculated her pension.

## II

Service retirement benefits for a member of the STRS depend on the teacher's "final average salary," as defined by R.C. 3307.01(J). The definition then provided:

" 'Final average salary' means the sum of the annual earnings for the three highest years of compensation for which contributions were made by the member, divided by three. If the member has a partial year of contributing service in the year in which he terminates his employment and such partial year is at a rate of compensation which is higher than the rate of compensation for any one of the highest

three full years of annual earnings, the board shall substitute the compensation earned for such partial year for the compensation earned for a similar fractional portion in the lowest of the three high years of annual earnings before dividing by three. * * *"

Thus, the superintendent's "final average salary" depends upon her most favorable earning years for which she made prescribed contributions. R.C. 3307.51 controls those contributions. Although the legislature subsequently amended R.C. 3307.51 (effective April 24, 1986), it then provided:

"Each teacher who is a member of the state teachers retirement system shall contribute eight per cent of his earned compensation to the teachers' savings fund except that the state teachers retirement board may raise the contribution rate to the fund to a rate not greater than ten per cent of the teacher's earned compensation. Such contribution shall be deducted by the employer on each payroll * * *. *Contributions shall not be withheld on pay for (1) unused or converted sick leave, (2) vacation pay covering concurrent periods for which other salary, compensation, or [retirement] benefits under Chapter 3307. of the Revised Code are paid, or (3) any other extra compensation or terminal pay which may be paid for services not actually rendered.*" (Emphasis added.)

The superintendant contends that her $14,000 lump sum retroactive raise constitutes earnings for which the school board can contribute her share to the state fund. If so, her pension will increase appreciably. The school board must contribute the appropriate portion of that payment if it was "earned compensation." The board cannot contribute for that payment if it was "terminal pay" which did not compensate her for services rendered. Cf. *Oakwood City School Dist. Bd. of Edn.* v. *State Teachers Retirement System* (Mar. 3, 1983), Montgomery App. No. CA-8013, unreported.

The superintendent argues that the plain language of her June 24, 1981 contract describes the payment as a retroactive salary increase:

"Employee's monthly salary shall be increased by the sum of ONE THOUSAND FOUR HUNDRED AND NO/100 ($1,400.00) DOLLARS per month retroactive to September 1, 1980 through June 30, 1981 and that the total additional compensation due her in the sum of FOURTEEN THOUSAND AND NO/100 ($14,000.00) DOLLARS shall be paid JUNE 30, 1981."

If the agreement had no further provisions and there were no contrary surrounding circumstances, the language of the agreement could be dispositive. Cf. *Hager* v. *State Teachers Retirement System* (Sept. 17, 1985), Franklin App. No. 85AP-475, unreported. Where other provisions in the same contract and surrounding circumstances suggest a contrary conclusion, the trier of fact may have to determine the real nature of the payment.

By her agreement, the superintendent waived her rights to payment for sick leave, unused vacation, and compensatory time. Her early retirement facilitated her replacement and eliminated the board's need to pay her successor an otherwise anticipated "consultant fee" until September.

On the other hand, the board gave her no prior raise for 1980-1981, even though it gave her raises in earlier years. Further, the board gave other managerial personnel raises for 1980-1981. The superintendent stated that she neglected to negotiate for her own raise earlier because other administrative matters occupied her attention. If the superintendent had not terminated her employment then, she would have received two additional

months' salary at $7,332 rather than two months' pension at $4,400.

Reasonable minds could find that the $14,000 payment compensated the retiring superintendent for services actually rendered. Alternatively, they could find that the $14,000 compensated her for "unused sick leave," "vacation pay," or "terminal pay." Therefore, summary judgment was inappropriate.

### III

The superintendent's two assignments of error (a) challenge the summary judgment, and (b) contend that the ruling was contrary to the manifest weight of the evidence. We sustain the first assignment because the evidentiary materials fail to demonstrate as a matter of law that the disputed payment should not have affected her pension. We reject the second assignment because summary judgments do not weigh evidence. See Civ. R. 56(C). They are inappropriate if there is any genuine issue of material fact. *Toledo's Great Eastern Shoppers City, Inc.* v. *Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St. 3d 198, 201, 24 OBR 426, 428-429, 494 N.E. 2d 1101, 1103-1104.

Hence, we reverse the trial court's judgment and remand the case for further proceedings.

*Judgment reversed and cause remanded.*

ANN MCMANAMON and KRUPANSKY, JJ., concur.