[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 16.]

THE STATE OF OHIO, APPELLEE, *v.* WHITE, APPELLANT.

[Cite as *State v. White*, 1998-Ohio-363.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(Nos. 96-2029 and 96-2509—Submitted January 20, 1998—Decided May 20, 1998.)

APPEALS from the Court of Common Pleas of Ashland County, No. 96-CRI-07366, and the Court of Appeals for Ashland County, No. 96-COA-01182.

_____

{¶ 1} This appeal stems from the shooting death of Ohio Highway Patrol Trooper James Gross. Defendant-appellant, Maxwell D. White, Jr., was convicted of aggravated murder with death penalty specifications under R.C. 2929.04(A)(6) (killing a peace officer) and R.C. 2929.04(A)(3) (offense committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense). Appellant was also convicted of having a weapon while under a disability, and abduction. The facts leading to this tragic death are as follows.

{¶ 2} At around 5:00 p.m., on January 18, 1996, appellant arrived at the condominium he shared with his mother and told her he was taking the night off from his job at the Kroger's warehouse. Appellant left with his pool cue and returned home close to midnight. Appellant was drunk and asked to be left alone. His mother went upstairs, hoping that appellant would pass out. She confronted appellant when the noise continued, and warned him that someone might call the police if he did not quiet down. Appellant became more agitated and screamed obscenities at his mother. Appellant feared the police because he was on probation for carrying a concealed weapon and believed the police had harassed him in the past and had singled him out. He told his mother that he could not go to jail and that he would rather go to the morgue than go to prison.

**{¶ 3}** His mother went back upstairs to her bedroom, called her daughter, Dorothy ("Dotty"), and told her how appellant was acting. When appellant learned that his mother was on the phone, he pulled all the phones off the wall and told his mother not to call the police.

**{¶ 4}** Appellant then retrieved a gun from the gun cabinet and, after Dotty arrived at the condominium, appellant ordered his mother and sister to pack his duffel bags and fill one bag with his clothes and another with guns from his late father's gun collection. Appellant explained that he wanted to go live in the woods. He broke the glass to the entertainment center and took out the radio. Appellant used a jump rope to tie his mother and sister to a pole. As appellant fumbled with a clip for the gun he was holding, he fired a shot and wounded his mother just above the right ankle. Appellant left the condominium. Dotty untied herself and her mother and called for help.

**{¶ 5}** In the early morning hours of January 19, 1996, a UPS driver and a truck-driving couple who were heading north on I-71 heard CB reports of a brown four-door car driving erratically on the highway. At that time, Trooper Gross was temporarily filling in for the dispatcher (who was on break) at the Ashland post of the State Highway Patrol. At 3:10 a.m., Gross received a CB report regarding the brown car. Gross left the dispatching area to respond to the call. The truck drivers saw Gross's State Highway Patrol car enter I-71 at milepost 186. They radioed the officer a description of the brown car. As Gross followed the car for about four miles, the driver "straightened up" his driving.

**{¶ 6}** At milepost 190, Gross pulled the car over and reported the license plate to the dispatcher. The dispatcher advised Gross that the car was registered to appellant and that appellant did not have driving privileges. The two truck drivers, Jeffrey and Susan Erickson, saw Gross step out of his vehicle, approach appellant's car and lean toward the driver's side car door to talk to appellant. Mrs. Erickson then saw a flame and heard a pop. Mr. Erickson observed Gross spin around and

begin to fall as he tried to run back to his cruiser. Gross slipped and fell. Appellant leaned out of his cracked-open driver's side door and fired shots at the officer's back. Mrs. Erickson heard two more pops and saw two flashes. Her husband testified that the trooper "didn't have a chance" to pull out his weapon in response. Appellant sped away and continued north on I-71.

{¶ 7} At approximately 3:15 a.m., the truck drivers radioed on their CB that an officer had been shot. They communicated with another truck driver ahead and told the driver to try to push appellant's car off the road. The truck driver attempted to do this, and forced appellant's car into the median, causing it to fishtail. However, appellant was able to regain control over his vehicle. A high-speed chase ensued, with several different law enforcement agencies joining in pursuit of appellant at speeds over one hundred miles per hour. Eventually, appellant crashed his vehicle into a concrete drainage culvert near the State Route 18 exit of I-71 northbound. Police apprehended appellant without further incident. From the front floorboard of his car, police retrieved a Smith & Wesson semiautomatic pistol with an empty clip. Appellant was taken to the hospital for injuries he had sustained, and was later confined to jail.

{¶ 8} In the meantime, the UPS driver, who had been following Gross, and a deputy sheriff from the Ashland County Sheriff's Department stopped at milepost 190 and found Gross lying on his stomach directly behind his cruiser. Gross's weapon was in his holster and a flashlight he had carried was lying underneath the cruiser. The sheriff found no pulse and attempted mouth-to-mouth resuscitation and CPR on Gross, with the UPS driver's help. However, they were unsuccessful.

{¶ 9} The forensic pathologist who performed the autopsy on Gross testified that Trooper Gross had sustained two gunshot wounds. The gunshot wound to his left arm was consistent with a defensive wound, and resulted in three fractures. The other gunshot wound entered Gross's right back just below his bullet-proof vest. As a result, Gross sustained multiple perforations of his internal

organs, including the right ventricle of the heart, which caused his death. The pathologist testified that, at the most, Gross lived only four minutes after the bullet entered his lower back.

{¶ 10} Friends and co-workers of appellant also testified at trial on behalf of the state. Their testimony consistently portrayed appellant as a person who disliked law enforcement officers and felt harassed by them. Following his arrest for carrying a concealed weapon in 1995, appellant told co-workers that he would "cap the ass" of (shoot) the next police officer who stopped him. He also said that "something would happen" if a policeman ever pulled him over again.

{¶ 11} The defense rested without calling any witnesses. After deliberation, the jury found appellant guilty as charged.

{¶ 12} At the mitigation hearing, several witnesses testified on appellant's behalf, including a clinical psychologist and a chemical-dependency counselor from Interact Behavioral Health Care Services, where appellant had received outpatient services for his alcohol abuse. Co-workers and family members also testified. Their testimony revealed that appellant grew up on a farm and was above average in his intelligence. He was involved in 4-H and worked at a grocery store in high school. Over the years, appellant had difficulty in school and with authority figures. As an adult, appellant went into the Navy but received a less than honorable discharge. It was widely acknowledged that appellant had a serious drinking problem and had attended Alcoholics Anonymous meetings and outpatient counseling, but was unsuccessful in his attempt to stop drinking. There was also testimony that his deceased father had been critical of him.

{¶ 13} According to the psychologist hired by appellant, appellant suffers from substance dependency (primarily alcohol, but also marijuana) and from dysthymic disorder, a form of depression. He also stated that appellant had a dysfunctional family and that his father was abusive.

**{¶ 14}** Appellant gave an unsworn statement and apologized to Trooper Gross's widow and family. Appellant accepted responsibility for his actions and asked the jury to spare his life.

**{¶ 15}** The state presented several witnesses at the sentencing hearing. Gross's widow and mother expressed their grief over the loss of the decedent. Friends and co-workers described appellant as argumentative and defiant to authority figures at work, but did not characterize him as depressed. One co-worker testified that appellant had threatened him while at work.

**{¶ 16}** After considering this mitigation evidence, the jury recommended that appellant be sentenced to death. The trial court imposed the death sentence for the aggravated murder of Trooper Gross and sentenced appellant to consecutive prison sentences for his other convictions. Appellant filed an appeal with the court of appeals. This appeal was dismissed for want of jurisdiction. He appealed the dismissal to this court. (Case No. 96-2509.) Appellant also filed an appeal directly to this court (case No. 96-2029), and the appeals were consolidated.

**{¶ 17}** The cause is now before this court upon an appeal as of right and a claimed appeal as of right.

_____

*Robert DeSanto*, Ashland County Prosecuting Attorney, and *Ramona Francesconi Rogers*, Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, Ohio Public Defender, *J. Joseph Bodine, Jr.*, and *Kelly Culshaw*, Assistant Public Defenders, for appellant.

_____

**FRANCIS E. SWEENEY, SR., J.**

**{¶ 18}** Appellant raises fifteen propositions of law for our consideration. (See Appendix.) We have carefully considered each of these propositions of law, but adhere to our position that we need not separately address all propositions of law in opinion form. See *State v. Poindexter* (1988), 36 Ohio St.3d 1, 3, 520 N.E.2d

568, 570; *State v. Scudder* (1994), 71 Ohio St.3d 263, 643 N.E.2d 524. Therefore, we summarily dispose of those propositions of law where the error was not properly preserved or where the issues raised have previously been addressed by this court but rejected. We have also reviewed the death sentence for appropriateness and proportionality. For the reasons that follow, we affirm the judgment of the trial court and uphold the convictions and sentence of death.

I

ALLEGED JUROR BIAS

**{¶ 19}** In his first proposition of law, appellant argues that the trial court erred in failing to excuse a juror for cause where that juror expressed concern over whether she was able to be impartial to the appellant. Appellant points out that R.C. 2313.43 requires jurors to be "entirely unbiased," and asserts that the voir dire of this juror did not meet this standard.

**{¶ 20}** R.C. 2313.43 provides that when a juror is challenged on suspicion of being prejudiced or partial to either party, "[t]he validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased." We have previously held that a trial court has broad discretion in determining a juror's ability to be impartial. *State v. Williams* (1983), 6 Ohio St.3d 281, 288, 6 OBR 345, 351, 452 N.E.2d 1323, 1331. Thus, where a prospective juror is being challenged for bias, "[d]eference must be paid to the trial judge who sees and hears the juror." *Wainwright v. Witt* (1985), 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841, 853. A decision on a challenge to a prospective juror regarding his or her fairness and impartiality constitutes reversible error only when the trial court is shown to have abused its discretion. *State v. Wilson* (1972), 29 Ohio St.2d 203, 211, 58 O.O.2d 409, 414, 280 N.E.2d 915, 920.

**{¶ 21}** In deciding whether to exclude a juror for cause, the court must determine whether the prospective juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions

and his oath." *Adams v. Texas* (1980), 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589. Thus, the United States Supreme Court has held that jurors who are opposed to the death penalty in every case and are unable to follow the law should be disqualified. However, in *State v. Williams* (1997), 79 Ohio St.3d 1, 6, 679 N.E.2d 646, 653, we recognized that during voir dire in death penalty cases, prospective jurors often struggle with their personal beliefs concerning the death penalty. In these situations, it is the role of the trial judge to sort through the responses of prospective jurors to determine whether these individuals can follow the law.

**{¶ 22}** In this case, the challenged juror expressed repeated concerns over whether she could be fair to the appellant. However, she ultimately acknowledged that she was a fair person and was willing to listen to all the evidence before making a final decision on appellant's guilt. She also stated that she would not let her personal feelings interfere with her ability to be fair to appellant because she would have to live with that the rest of her life. Furthermore, she said she would obey the law and the court's instructions. Since the challenged juror ultimately said that she would follow the law and put aside her personal beliefs, we find that the trial court did not abuse its discretion in overruling appellant's challenge for cause.

**{¶ 23}** In Proposition of Law VII, appellant argues that due to the extraordinary pretrial publicity in this case, it can be presumed that the jury was biased and that he was denied a fair trial. He also contends that the voir dire inadequately addressed the issue of pretrial publicity.

**{¶ 24}** It is rare for a court to presume that a jury is prejudiced by pretrial publicity. *State v. Lundgren* (1995), 73 Ohio St.3d 474, 479, 653 N.E.2d 304, 313. Moreover, the fact that prospective jurors have been exposed to pretrial publicity does not, in and of itself, demonstrate prejudice. "[P]retrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Nebraska Press Assn. v. Stuart* (1976), 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d

683, 695. Therefore, if "the record on *voir dire* establishes that prospective veniremen have been exposed to pretrial publicity but affirmed they would judge the defendant solely on the law and the evidence presented at trial, it is not error to empanel such veniremen." *State v. Maurer* (1984), 15 Ohio St.3d 239, 252, 15 OBR 379, 390, 473 N.E.2d 768, 781; *State v. Carter* (1995), 72 Ohio St.3d 545, 556, 651 N.E.2d 965, 976. In *State v. Bayless* (1976), 48 Ohio St.2d 73, 98, 2 O.O.3d 249, 262, 357 N.E.2d 1035, 1051, we stated that "a careful and searching *voir dire* provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality."

{¶ 25} Contrary to appellant's assertions that the voir dire was inadequate, the record reveals that the contrary is true. The voir dire in this case was not cursory. It covered three days and four hundred fifty pages of transcript. The trial court asked prospective jurors questions about whether they had read about the murder or heard about it on radio or television. Several prospective jurors were familiar with the case. The court, as well as counsel for both sides, questioned those who indicated that they could not be fair and impartial to appellant. Following this in-depth questioning, the court excluded several prospective jurors who still felt that they could not be impartial due to the pretrial publicity. Appellant has not proven that the jury was prejudiced by pretrial publicity. Nor was the voir dire inadequate in this case. Consequently, we overrule this proposition of law.

II

PROSECUTORIAL MISCONDUCT

{¶ 26} In his second proposition of law, appellant alleges four areas of prosecutorial misconduct: (1) using "prosecutorial theatrics" to receive an emotional response from the jury; (2) presenting graphic details of the shooting and using irrelevant evidence to portray appellant as a bad person; (3) during the guilt phase closing arguments, making several inflammatory and derogatory remarks about appellant, commenting on the nature and circumstances of the crime, and expressing opinions about his character; and (4) during the penalty phase closing arguments, improperly remarking about appellant's unsworn statement and evoking sympathy from the jury when arguing for the death penalty.

{¶ 27} The test for prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. Since defense counsel failed to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 925. We will review these allegations under the plain-error standard.

{¶ 28} Under the heading of "prosecutorial theatrics," appellant points to the following and alleges error: displaying a large photograph of Trooper Gross in uniform, on an easel, in full view of the jury; hanging Trooper Gross's blood-soaked and tattered uniform on the witness stand; and demonstrating disgust toward appellant by using latex gloves to handle appellant's clothing. None of these examples is reflected in the transcript, and, according to appellant, the trial court overruled appellant's motion to correct the record. Under this heading, we find no plain error.

{¶ 29} We also find no plain error with the way in which the prosecutor had witnesses describe their attempts to revive Trooper Gross. The witnesses'

testimony, even when graphic, was relevant to describing the murder and its aftermath. The fact that an emotional response was elicited by one witness (who said, "Hang on buddy" as he tried to revive the trooper) does not show prosecutorial misconduct. Nor was it improper to have a witness state that the term "cap" was used by gang members. The witness was defining the term as used by appellant, and it is proper for the witness to explain how he was familiar with it. The testimony was relevant, and the term "cap" needed to be defined. As to allegations that the prosecutor appealed to the jurors' sympathy by referring to the way Trooper Gross looked before and after his death and by commenting on appellant's "grim reaper" tattoo and longer hair and goatee, none of these alleged acts of misconduct individually or collectively was outcome-determinative. *State v. Long* (1978), 53 Ohio St.2d 91, 96-97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 807-808.

{¶ 30} Appellant also alleges that the prosecutor made misstatements about his character during the guilt phase closing argument. For instance, appellant states that it was improper for the prosecutor to say that appellant "hated" the police and to call him a "coward." He also says it was prejudicial for the prosecutor to comment on his lack of expression when his mother testified. Again, under a plain-error analysis, we find no error requiring reversal. The evidence shows that appellant strongly disliked the police. Therefore, the prosecutor's statement that appellant hated the police was within acceptable latitude. Furthermore, calling appellant a coward is consistent with the evidence that appellant shot the trooper in the back. This remark is tame compared to comments we have allowed describing other defendants in capital cases. See, *e.g.*, *State v. Brown* (1988), 38 Ohio St.3d 305, 316-317, 528 N.E.2d 523, 538 (where defendant was called a monster); *State v. Beuke* (1988), 38 Ohio St.3d 29, 33, 526 N.E.2d 274, 280 (where defendant was referred to as a cancer requiring removal).

{¶ 31} Finally, appellant argues that the prosecutor made impermissible comments on appellant's unsworn statement during the sentencing phase closing

argument. In *State v. DePew* (1988), 38 Ohio St.3d 275, 285, 528 N.E.2d 542, 554, we stated that a prosecutor's comment on the lack of an oath or affirmation should be limited to pointing out that the defendant's statement has not been made under oath or affirmation. In this case, the prosecutor said to the jury, "[W]hen [the appellant] gave his unsworn testimony, he did not give you the respect of explaining it to you." Even if this comment went beyond the permissible limits set forth in *DePew*, we find that this remark does not rise to plain error, given the weight of the aggravating circumstances in relation to the mitigating factors. *State v. Lorraine* (1993), 66 Ohio St.3d 414, 419, 613 N.E.2d 212, 218. Other remarks, even those used to evoke passion (for example, that appellant "tore the heart out of a family"), were also within the permissible scope of closing argument. We have previously held that both parties are entitled to wide latitude during closing arguments. *State v. Brown* (1988), 38 Ohio St.3d 305, 317, 528 N.E.2d 523, 538. We find no plain error in any of the statements cited.

{¶ 32} None of the instances of alleged wrongdoing constitutes prejudicial prosecutorial misconduct. Appellant's second proposition of law is overruled.

III

INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 33} In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation was deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. To establish prejudice, the defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

{¶ 34} Appellant claims that his trial attorneys were defective because they elicited and allowed testimony regarding his past bad acts. For instance, during the cross-examination of his co-workers, appellant points out that defense counsel

SUPREME COURT OF OHIO

elicited responses that appellant had threatened one of them with a gun. The jury had already heard critical evidence that appellant had threatened to shoot the next police officer that stopped him, evidence used to show prior calculation and design. Defense counsel was apparently trying to lessen the blow of this evidence by showing that although appellant had threatened a co-worker, nothing had come of it and that the witnesses and appellant remained friends. Defense counsel later argued that the threat to police officers was an idle threat, and not evidence of prior calculation and design. This defense strategy was sound and did not amount to ineffective assistance of counsel.

{¶ 35} Appellant points to several other instances where he says trial counsel were ineffective for failing to object. For instance, he refers to the failure to object to the autopsy photographs and other demonstrative evidence displayed before the jury, to statements made by the prosecutor during closing argument in both the guilt and sentencing phase, to irrelevant testimony by Lieutenant Robert Ferguson regarding the purpose of wearing a bulletproof vest and the dangers of patrolling the highways at night, and to testimony regarding his previous offense for carrying a concealed weapon.

{¶ 36} Given the clear, overwhelming evidence against appellant, defense counsel were faced with a difficult task in preparing a defense. Although defense counsel should have objected in some circumstances, as we have pointed out in other propositions of law, appellant was not prejudiced by trial counsel's omissions. For instance, we recognize that defense counsel should have objected to the prosecutor's comments concerning appellant's unsworn statement, and, if appellant's assertions are valid, defense counsel should not have permitted the display of the large photograph of Trooper Gross or a display of his blood-soaked clothing. However, none of the instances raised by appellant in which counsel failed to object amount to prejudicial error. The evidence regarding his guilt was

overwhelming, and counsel's errors did not change the result of the trial. *State v. Bradley, supra.*

{¶ 37} Appellant also says that trial counsel was defective because they failed to request a change of venue due to the excessive pretrial publicity and because they did not conduct an adequate voir dire. As previously shown, the voir dire was adequate to uncover any bias or prejudice from prospective jurors. Furthermore, counsel made reasonable attempts to question jurors about their biases and whether they were affected by the pretrial publicity. Trial counsel's failure to request a change of venue is not tantamount to ineffective assistance of counsel. A change of venue is not automatically granted where there is extensive pretrial publicity. Instead, the decision to grant a change of venue rests largely within the discretion of the trial court. *State v. Maurer* (1984), 15 Ohio St.3d 239, 250, 15 OBR 379, 388-389, 473 N.E.2d 768, 780. Even if it would have been prudent to request a change of venue, we find that the empaneled jury was not prejudiced by the pretrial publicity. Thus, there was no prejudice stemming from defense counsel's failure to make this request.

{¶ 38} Since appellant has failed to show that he was prejudiced by defense counsel's representation, we overrule the ninth proposition of law.

IV

JURY INSTRUCTION ON INTOXICATION

{¶ 39} In Proposition of Law III, appellant argues that he was denied a fair trial when the court erroneously instructed the jury on intoxication. Specifically, appellant challenges the instruction on two grounds: (1) it erroneously informed the jury that intoxication is not a valid defense, and (2) it never informed the jury that appellant need only prove the defense by a preponderance of the evidence.

{¶ 40} The charge on intoxication read, in part:

"Intoxication is not an excuse for an offense. However, such evidence is admissible for the purpose of showing that the Defendant was so intoxicated that

he was incapable of forming the purpose to commit the offense of aggravated murder.

"The mere fact that a Defendant is intoxicated does not make him incapable of acting with prior calculation and design.

"* * *

"If you find that by reason of intoxication the mind of the accused was in such condition that he was not capable of forming a purpose to take the life of another with prior calculation and design, then he is not guilty of aggravated murder, as purpose is an essential element of that offense."

{¶ 41} Contrary to appellant's assertion, the challenged instruction does not state that intoxication is not a valid defense. It simply points out that intoxication "is not an excuse for an offense" and that it can be used to negate specific intent. We have held that intoxication may be considered in determining whether the defendant was capable of forming the specific intent essential to the charged crime. See *State v. Fox* (1981), 68 Ohio St.2d 53, 55, 22 O.O.3d 259, 260, 428 N.E.2d 410, 411-412. The challenged instruction follows this law. Moreover, we have previously held that the decision to instruct the jury on intoxication rests within the sound discretion of the trial judge and that no instruction need be given where there is insufficient proof of intoxication. *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus. The evidence in this case shows that appellant acted deliberately, and that his defense of intoxication was weak. Since the evidence of intoxication could not have supported a verdict of acquittal, the trial court could have chosen not to instruct on intoxication at all. However, even if the jury instruction given was misleading, because it did not include language regarding the burden of proof, we find that this omission does not constitute prejudicial error. We overrule this proposition of law.

## V

## WAIVER OF DEFENDANT'S PRESENCE

**{¶ 42}** Appellant was not present at a hearing where proposed jury instructions were considered. Prior to this hearing, defense counsel advised the court that he would execute a waiver for the defendant to sign, and would make it part of the record. However, that was never done. In Proposition of Law XI, appellant contends that his constitutional right to be present at all proceedings was violated when defense counsel waived his presence at this hearing.

**{¶ 43}** We have previously held that a defendant "has a fundamental right to be present at all critical stages of his criminal trial." *State v. Hill* (1995), 73 Ohio St.3d 433, 444, 653 N.E.2d 271, 281. However, the right to be present is not absolute. *State v. Meade* (1997), 80 Ohio St.3d 419, 421, 687 N.E.2d 278, 280. Therefore, even if a defendant should have been present at a stage of the trial, "[e]rrors of constitutional dimension are not *ipso facto* prejudicial." *State v. Williams* (1983), 6 Ohio St.3d 281, 286, 6 OBR 345, 349, 452 N.E.2d 1323, 1330. Prejudicial error exists only where "a fair and just hearing [is] thwarted by [defendant's] absence." *Snyder v. Massachusetts* (1934), 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679.

**{¶ 44}** We find that appellant's absence during the hearing on proposed instructions did not deprive him of a fair trial. Accordingly, his absence and the failure of defense counsel to make a written waiver for the record were harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709.

## VI

## RIGHT TO COMPLETE TRANSCRIPT

**{¶ 45}** In Proposition of Law VIII, appellant argues that the record in this case is incomplete because a videotape of the trial, which was recorded by a local television station, was not made part of the record. Essentially, appellant contends that his constitutional rights are being jeopardized because the trial court denied him a complete transcript of the proceedings, which is necessary to prosecute his appeal.

**{¶ 46}** This argument lacks merit. In *State ex rel. Spirko v. Court of Appeals* (1986), 27 Ohio St.3d 13, 18, 27 OBR 432, 436, 501 N.E.2d 625, 629, we held that under Section 16, Article I of the Ohio Constitution, a capital defendant is entitled to a complete, full, and unabridged transcript of all proceedings against him. Contrary to appellant's assertion that he is entitled to the videotape recording of the proceedings, a full transcript refers to the complete written record of the trial proceedings and does not necessarily include a videotape made by a television station. Furthermore, appellant previously filed a motion with this court to order the television station to preserve and copy the videotape to be made part of the record on appeal. However, we denied this motion and continue to adhere to that position. Accordingly, appellant's eighth proposition of law is overruled.

## VII

**{¶ 47}** We summarily overrule Proposition of Law XIII, in which appellant attacks the new procedure for review of death-penalty cases, on the authority of *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668. Case No. 96-2509 was therefore not properly filed as an appeal as of right, and we hereby dismiss it.

16

VIII

INDEPENDENT REVIEW AND PROPORTIONALITY

{¶ 48} After independent assessment, we find that the evidence supports the aggravating circumstances that appellant murdered a peace officer who he knew or had reasonable cause to know was engaged in his duties as a peace officer (R.C. 2929.04[A][6]) and that he killed Trooper Gross to escape detection or apprehension for another offense. R.C. 2929.04(A)(3). We now weigh the facts and evidence in the record to determine whether the aggravating circumstances of which appellant was convicted outweigh the mitigating factors beyond a reasonable doubt.

{¶ 49} We find that the nature and circumstances of the offense are in no way mitigating. On the evening of January 18, 1996, appellant skipped work and went out drinking. Hours later, he returned home, was belligerent toward his mother, and damaged property in her home. He pointed a gun at his mother and sister and ordered them to pack his personal belongings. Fearing that the police would be called, he tore the phones off the wall and then tied up his mother and sister. Before leaving, appellant fired a gun at his mother, wounding her just above the ankle. Then, following reports of erratic driving along Interstate 71, Trooper Gross pulled appellant's vehicle to the berm of the highway. Witnesses saw appellant fire at least two shots at Trooper Gross. The shot that killed Trooper Gross hit him in the back as he tried to escape from appellant. We find nothing in the nature and circumstances of this crime to be mitigating.

{¶ 50} Appellant's history, character, and background provide some mitigating weight. Appellant grew up on a family farm, the oldest of two children. He was involved with 4-H and church activities. As a child, he often played alone and read frequently. One teacher questioned his attention span; however, subsequent tests revealed that he was very intelligent and had a long attention span. During high school, he worked at a grocery store. Following high school, he joined

17

the Navy. However, he abused alcohol and drugs, was disciplined in three nonjudicial proceedings, and was ultimately let go from the Navy with a less than honorable discharge. Appellant later worked at the Kroger distribution warehouse. As an adult, appellant continually had problems with alcohol abuse. He attended Alcoholics Anonymous and Interact Behavioral Health Care, but could not stop drinking. There was also evidence that his father may have been abusive or hard on him as he was growing up, which is entitled to some weight. Additionally, appellant had told some witnesses that he had lost a wife or girlfriend in an automobile accident while stationed in Hawaii. However, the state refuted this allegation. Even if true, it is entitled to little mitigating weight.

{¶ 51} With respect to the statutory mitigating features, very few are present.

{¶ 52} Under R.C. 2929.04(B)(3), we are to take into account the factor of whether, at the time the offense was committed, the appellant suffered from a mental defect causing him to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Appellant was said to have suffered from two types of psychiatric disorders: a dysthymic disorder, which is a persistent form of depression, and substance abuse. Appellant did not claim that these mental diseases or defects met the criteria of R.C. 2929.04(B)(3). We give them only modest weight in mitigation under R.C. 2929.04(B)(7). See *State v. Brooks* (1986), 25 Ohio St.3d 144, 155-156, 25 OBR 190, 200, 495 N.E.2d 407, 417.

{¶ 53} As to R.C. 2929.04(B)(5), appellant had a previous conviction for carrying a concealed weapon in 1995 and was placed on probation for that crime. Since there is not an absence of a criminal record, this factor does not weigh in appellant's favor.

{¶ 54} Under the catchall provision of R.C. 2929.04(B)(7), appellant's alcohol and drug abuse problems are entitled to some mitigating weight. See *State*

*v. Green* (1993), 66 Ohio St.3d 141, 153, 609 N.E.2d 1253, 1263. Appellant's intoxication at the time the murder was committed is also given slight weight in mitigation. However, appellant's predisposition toward disliking police as well as his actions prior to the murder reduce the weight ascribed to this factor. Appellant's remorse is also entitled to some weight under this subsection. However, there are no other relevant statutory mitigating factors to consider.

{¶ 55} Based upon the foregoing, and upon weighing the aggravating circumstances against the mitigating factors, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

{¶ 56} Appellant's actions in committing a murder of a peace officer fulfilled the threats he had expressed to others that "something would happen" to the next officer who pulled him over. His actions merit the capital penalty to which he was sentenced. We conclude that the death penalty imposed in this case is both appropriate and proportionate when compared with capital cases involving the murder of a peace officer (*State v. Glenn* [1986], 28 Ohio St.3d 451, 28 OBR 501, 504 N.E.2d 701) and murder to escape detection, apprehension, trial, or punishment for another offense (*State v. Burke* [1995], 73 Ohio St.3d 399, 653 N.E.2d 242).

{¶ 57} Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed*
*in case No. 96-2029.*
*Dismissal of appeal affirmed*
*in case No. 96-2509.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

---

APPENDIX

{¶ 58} "Proposition of Law No. I[:] A prospective juror must be removed for cause when she unequivocally states that she is unable to set aside her belief

that the defendant is guilty. Failure to remove such a juror deprives a capital defendant of the rights to a fair trial, an impartial jury, a reliable sentencing determination and due process of law.

{¶ 59} "Proposition of Law No. II[:] When prosecutors infest [*sic*] a capital trial with invective and use disturbing physical evidence in such a manner that it inflames the jury, a capital defendant is denied his substantive and procedural due process rights to a fair trial as guaranteed by the Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, as well as Article I, §§ 1, 2, 9, 10, 16 and 20 of the Ohio Constitution.

{¶ 60} "Proposition of Law No. III[:] By refusing [to] properly instruct the jury on the defense of intoxication, the trial court denied appellant White the right to a fair trial and to due process of law. U.S. Const. Amend. VI and XIV, Ohio Const. Art. I, §§ 1, 2, 9, 10, 16 and 20.

{¶ 61} "Proposition of Law No. IV[:] When a trial court refuses to provide the jury correct, relevant information about parole availability and relies upon a capital defendant's future dangerousness as an aggravating factor, a capital defendant is denied the right to a fair trial, due process of law and a reliable sentencing determination. U.S. Const. Amend. VI, VIII, and XIV; Ohio Const. Art. I, §§ 2, 5, 9, 10, 16 and 20.

{¶ 62} "Proposition of Law No. V[:] When a trial court evaluates expert psychological testimony relevant to the mitigating factors in Ohio Rev.Code Ann. Section 2929.04(B) under a sanity/competency standard and rewrites the expert's report before submitting it to the jury, a capital defendant is denied the rights to a fair trial, a reliable sentencing determination and due process of law. U.S. Const. Amends. VI, VIII, and XIV; Ohio Const. Art. I, §§ 2, 9, 10, 16 and 20.

{¶ 63} "Proposition of Law No. VI[:] A capital defendant is denied his rights to a fair trial, due process and a reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth

Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when gruesome and cumulative photographs are admitted into evidence when their prejudicial effect outweighs their probative value.

{¶ 64} "Proposition of Law No. VII[:] When every potential juror in a capital trial has been exposed to pre-trial publicity and not adequately voir dired to reveal prejudice, it is error for the trial court to conduct and allow cursory voir dire examinations to uncover such prejudice. Fifth, Sixth and Fourteenth Amendments to United States Constitution and Article I, Section 5, 10 and 16 of the Ohio Constitution.

{¶ 65} "Proposition of Law No. VIII[:] When the trial court allows a capital trial to be video taped pursuant to the Rules of Superintendence and fails to make the video part of the record, a sufficient review of the record pursuant to Ohio Rev.Code Ann. § 2929.05 cannot be conducted. U.S. Const. Amend. XIV; Ohio Const. Art. I, §§ 1, 2, 3, 5, 10 and 16.

{¶ 66} "Proposition of Law No. IX[:] When defense counsel fail to object to obvious constitutional errors during trial and use trial strategies that are harmful to their client, a capital defendant is deprived of the right to the effective assistance of counsel that is guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10, and 16 of the Ohio Constitution.

{¶ 67} "Proposition of Law X[:] A trial court denies a capital defendant the right to a fair trial and to due process of law when it erroneously instructs the jury or fails to instruct the jury during the trial and penalty phases of a capital case.

{¶ 68} "Proposition of Law XI[:] A capital defendant has a right to be present at all proceedings. U.S. Const. Amend. VI, VIII and XIV; Ohio Const. Art. I, §§ 2, 5, 9, 10, 16 and 20.

{¶ 69} "Proposition of Law No. XII[:] A capital appellant, challenging his death sentence as disproportionate to cases in which the same or similar crimes

were committed, is denied due process and equal protection when the reviewing court limits the pool of cases for comparison to only those cases in which the death penalty was imposed and then failing to engage in any meaningful review.

{¶ 70} "Proposition of Law No. XIII[:] A change in the Ohio Constitution, which provides less review to capital appellants (whose crimes were committed on or after January 1, 1995) violates the Fourteenth Amendment and fails to provide the meaningful appellate review mandated by the Eighth Amendment.

{¶ 71} "Proposition of Law No. XIV[:] The trial court erred by sentencing Mr. White to death in violation of treaties to which the United States of America is a signatory in violation of the Supremacy Clause of the United States Constitution.

{¶ 72} "Proposition of Law XV[:] The death penalty authorized by the Ohio Revised Code deprives capitally-charged defendants of their lives without due process of law, denies equal protection and imposes cruel and unusual punishment in violation of the Ohio and United States Constitutions."