OPINION *Page 2 
{¶ 1} Defendant-appellant Anthony Dawayne Webb appeals his conviction in the Richland County Court of Common Pleas on the charge of aiding and abetting murder. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On March 11, 2006, at approximately 12:30 a.m., a fight broke out at Lulu's bar located at 328 Orange Street, Mansfield, Ohio. Appellant alleges during the fight Benetitus White "sucker punched" Christopher Webb, Appellant's brother. Numerous parties joined in the fight, including Appellant.
 {¶ 3} On March 22, 2006, the State alleges Appellant and his brother, Christopher Webb, were outside a residence at 204 South Franklin Street, Mansfield, in a gray Chevrolet Caprice. The vehicle turned left on Flint Street, and seconds later, shots were fired. Travis Harris, who was standing in front of the residence, died as a result of a .22 caliber bullet piercing his pulmonary artery and right bronchus, causing his lungs to fill with blood.
 {¶ 4} As a result of the incident, Appellant was charged with one count of aiding and abetting aggravated murder, with a gun specification. Following a jury trial, Appellant was found not guilty of aiding and abetting aggravated murder, but guilty of aiding and abetting murder and not guilty of a gun specification. The trial court sentenced Appellant accordingly.
 {¶ 5} Appellant now appeals assigning as error: *Page 3 
 {¶ 6} "I. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL TO WHICH HE IS ENTITLED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 {¶ 7} "II. THE COURT ERRED IN ADMITTING EXHIBITS 23 AND 25 INTO EVIDENCE."
 I {¶ 8} In the first assignment of error, Appellant asserts he was denied the effective assistance of counsel.
 {¶ 9} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 10} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 11} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing there is a reasonable *Page 4 
probability but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 12} Initially, Appellant asserts his trial counsel was ineffective in failing to move the trial court for change of venue under Criminal Rule 18, which states,
 {¶ 13} "(B) Change of venue; procedure upon change of venue
 {¶ 14} "Upon the motion of any party or upon its own motion the court may transfer an action to any court having jurisdiction of the subject matter outside the county in which trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending."
 {¶ 15} Appellant cites pretrial publicity of the incident, as well as the pretrial publicity of the prior conviction of his brother Christopher Webb, noting several prospective jurors indicated some awareness of the instant case or the prior case.
 {¶ 16} In State v. White (1998), 82 Ohio St.3d 16, the Ohio Supreme Court addressed this issue, holding:
 {¶ 17} "It is rare for a court to presume that a jury is prejudiced by pretrial publicity. State v. Lundgren (1995), 73 Ohio St.3d 474, 479,653 N.E.2d 304, 313. Moreover, the fact that prospective jurors have been exposed to pretrial publicity does not, in and of itself, demonstrate prejudice. `[P]retrial publicity-even pervasive, adverse publicity-does not inevitably lead to an unfair trial.' Nebraska PressAssn. v. Stuart (1976), 427 U.S. 539, 554, 96 S.Ct. 2791, 2800,49 L.Ed.2d 683, 695. Therefore, if `the record on voir dire establishes that prospective veniremen have been exposed to pretrial publicity but affirmed they would judge the defendant solely on the law and the *Page 5 
evidence presented at trial, it is not error to empanel such veniremen.'State v. Maurer (1984), 15 Ohio St.3d 239, 252, 15 OBR 379, 390,473 N.E.2d 768, 781; State v. Carter (1995), 72 Ohio St.3d 545, 556,651 N.E.2d 965, 976. In State v. Bayless (1976), 48 Ohio St.2d 73, 98, 2 O.O.3d 249, 262, 357 N.E.2d 1035, 1051, we stated that `a careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality'."
 {¶ 18} Upon review of the record, none of the jurors indicated they were prejudiced by the pervasive pretrial publicity of the incident. Rather, as Appellant states, several prospective jurors indicated some awareness of the prior case or the incident. All affirmed they would be fair and impartial and determine the matter on the evidence submitted. Accordingly, Appellant has not demonstrated his counsel was ineffective for failing to move the trial court for a change of venue, where the trial court would have in all likelihood overruled the motion.
 {¶ 19} Secondly, Appellant argues his counsel was ineffective in failing to object to testimony offered at trial. Specifically, Appellant cites the testimony of Aisha Gordon, Sonji Mack and Davonte' Gafford.
 {¶ 20} Aisha Gordon, Benetitus White's girlfriend who lived at the residence at which the incident occurred, testified at trial she knew Appellant and his brother were aware Benetitus White could be found at her house. Appellant argues the state failed to establish a foundation for the source of her testimony.
 {¶ 21} Upon review of the record, Aisha Gordon testified Benetitus White was her boyfriend, and he had been friends with Appellant and his brother. She answered "yes" to the question posed by the state as to whether Appellant and his brother would know *Page 6 
to find Benetitus at her house. Appellant has not demonstrated an objection would have been sustained due to the admission of the testimony as Aisha testified Appellant was familiar with her home and her family and had previously been to her home. Furthermore such testimony would not have prejudiced the outcome. Accordingly, Appellant has not met either prong of Strickland, and has not demonstrated the ineffective assistance of counsel in failing to object to the testimony.
 {¶ 22} Appellant next cites the testimony of Sonji Mack, who lived at the residence, stating he was standing on the sidewalk with Travis Harris when Appellant started shooting. Mack testified "next thing you know, from my understanding, they hit Diamond, come up this way, had to park somewhere around here, get out, walk over here, and that is when the shooting started." Appellant argues the statement contains obvious hearsay.
 {¶ 23} Upon review of the testimony, there is no indication Mack is testifying about a statement made by another person; rather, Mack is testifying relative to his personal understandings. We cannot determine if it was based on hearsay or the witnesses personal knowledge or speculation. Nevertheless, Appellant has not demonstrated prejudice as a result of this testimony being admitted as it was not crucial in securing the conviction. Accordingly, Appellant's counsel was not ineffective in failing to object to the testimony.
 {¶ 24} Finally, Appellant cites the testimony of Davonte' Gafford stating Appellant left his aunt's home at 235 Schmidt Court to go to Burger King and bought food in order to create an alibi. Appellant asserts the testimony was speculative, and counsel was ineffective in failing to object. *Page 7 
 {¶ 25} Upon review of the record, Gafford testified he was with Appellant, his brother and Duwane "Youngster" Larkins at Appellant's aunt's house on the night of the shooting. Gafford testified they left the house, and while he was walking behind Appellant and his brother, they started shooting. Gafford testified he fled with Appellant and they hid their guns while Youngster drove them to a hiding place. Based upon his testimony, we find Gafford's statement regarding Appellant's returning to the house with food to establish an alibi, while inadmissible as being speculative, is not prejudicial in light of Gafford's other admissible testimony and the whole evidence. Accordingly, Appellant's counsel was not ineffective in failing to object to the testimony.
 {¶ 26} For the reasons set forth above, Appellant's first assignment of error is overruled.
 II. {¶ 27} In the second assignment of error, Appellant argues the trial court erred in admitting Exhibits 23 and 25 into evidence, despite counsel's objection to their introduction.
 {¶ 28} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 29} Appellant objects to the trial court's admission of Exhibit 23, a photo array including a picture of himself, and Exhibit 25, a photo array including himself and a picture of his brother. *Page 8 
 {¶ 30} Appellant argues the only identifications of Appellant in Exhibit 23 were by Aisha Gordon and Sonji Mack, who never saw Appellant. However, upon review of the record, the foundation for admission of Exhibit 23 was provided by Davonte' Gafford, who testified:
 {¶ 31} "Q. March 28th, 2007, you were speaking to the detective, did he show you some photo line-ups?
 {¶ 32} "A. Yes.
 {¶ 33} "Mr. Tunnell: Show you 23 and 31.
 {¶ 34} "Q. Let me show you State's Exhibit 23, is that one of the line-ups he showed you?
 {¶ 35} "A. Yes.
 {¶ 36} "Q. Did you recognize anybody in there?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. Who did you recognize?
 {¶ 39} "A. T.
 {¶ 40} "Q. What number was he?
 {¶ 41} "A. Four.
 {¶ 42} "Q. Did you tell the detective that?
 {¶ 43} "A. Yes.
 {¶ 44} "Q. How about 31?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. Who did you recognize in there?
 {¶ 47} "A. Snake. *Page 9 
 {¶ 48} "Q. What number was he?
 {¶ 49} "A. Three.
 {¶ 50} "Q. Do these look like the same line-ups they showed you then?
 {¶ 51} "A. Yes.
 {¶ 52} "Q. When they showed them to you, did they have the second page?
 {¶ 53} "A. No.
 {¶ 54} "Q. What question was asked to you when they put these in front of you and said do you identify anybody?
 {¶ 55} "A. Did I see any one of those guys on the paper that was in the house.
 {¶ 56} "Q. And you identified Snake and T?
 {¶ 57} "A. Yes, sir."
 {¶ 58} Tr. at 543 — 545.
 {¶ 59} Upon review of Gafford's testimony set forth above, the trial court did not abuse its discretion in admitting into evidence Exhibit 23.
 {¶ 60} As to Exhibit 25, the following exchange took place during the testimony of Aisha Gordon:
 {¶ 61} "Q. What question was asked of you to identify these guys?
 {¶ 62} "A. Oh, he had just asked me if I knew which guy it was.
 {¶ 63} "Q. Which guy that did what?
 {¶ 64} "A. That did the shootings.
 {¶ 65} "Q. Okay. And you picked out these two guys?
 {¶ 66} "A. Yes.
 {¶ 67} "Q. Okay. Now, at the time of the shooting, you weren't home? *Page 10 
 {¶ 68} "A. No.
 {¶ 69} "Q. You didn't see anybody shooting a gun?
 {¶ 70} "A. No.
 {¶ 71} "Q. So when the detective says, pick out the guys that did the shooting, how do you know it is these two guys?
 {¶ 72} "A. Uhm, because Benetitus said —
 {¶ 73} "Mr. Brown: Objection to what Benetitus said.
 {¶ 74} "The Court: Is that —
 {¶ 75} "Mr. Tunnel: It is only to explain why she is picking these two out, Judge. She wasn't there.
 {¶ 76} "The Court: Okay, come to the front of the bench, would you please, Mr. Tunnell.
 {¶ 77} "Mr. Tunnell: Sure.
 {¶ 78} "Sidebar
 {¶ 79} "The Court: What is she going to say?
 {¶ 80} "Mr. Tunnell: She just said that Benetitus told her that is who was shooting. The question was posed to her, do you see the guys that were doing the shooting, and she indicated, she initialed, but she was at the pizza place. Well, then, how did you come to the conclusion these two were shooting?
 {¶ 81} "The Court: So she said she identified these two guys because Benetitus told her these are the two guys that were there, not because she saw them.
 {¶ 82} "Mr. Tunnell: That's correct. That is what she is testifying to. *Page 11 
 {¶ 83} "Mr. Brown: What Benetitus says is hearsay. You can't get in Benetitus's testimony through her.
 {¶ 84} "Mr. Robinson: The problem is you are planning to read his transcript if you can't —
 {¶ 85} "The Court: We will deal with that when it comes. But at this point, what she was asked to do was identify if she saw those people in these charts. That is how you are going to have to present it.
 {¶ 86} "Mr. Tunnell: What she said . . . Why did they have you pick guys out of the lineup? She says, they asked me who did the shooting. And I says, well, then, how can you pick these out if you weren't there? So, I mean, it is solely to explain her actions.
 {¶ 87} "Mr. Brown: You are trying to get in — —
 {¶ 88} "The Court: Objection sustained.
 {¶ 89} "Mr. Tunnell: Very well.
 {¶ 90} "Sidebar Concluded
 {¶ 91} "The Court: Folks, a part of what is going on here is there is a hearsay objection where someone is not allowed to testify for someone else. Each person needs to come in and be subject to cross-examination themselves. So we can't have one witness come and say what some witness said or was going to say. There are about 25 exceptions to the the hearsay rule. That is why it takes me time sometimes to figure out if that is what is happening. In this case, I have sustained the hearsay objection."
 {¶ 92} Tr. at 219 — 221. *Page 12 
 {¶ 93} Despite the trial court's properly sustaining the objection, Exhibit 25 was nonetheless given to the jury during deliberations. While we find the submission of Exhibit 25 to the jury to be error, in light of the evidence presented by the State supporting Appellant's conviction, we find the error to be harmless error. Devonte Gafford testified he witnessed Appellant take a gun from their mutual friend, shortly before the shooting. He later heard Appellant and his brother shooting, while he was walking in front of them. Gafford testified he saw Appellant and his brother leave in a car, after ordering him to hide the guns. Further, Andrew Gray testified at trail Appellant had bragged about killing Harris while the two of them were being held in the same jail. The State presented sufficient evidence establishing Appellant's motive, and supporting his conviction.
 {¶ 94} The second assignment of error is overruled.
 {¶ 95} Appellant's conviction in the Richland County Court of Common Pleas is affirmed.
 Hoffman, P.J. Farmer, J. and Delaney, J. concur *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's conviction in the Richland County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1