The following facts are pertinent to this appeal. On August 30, 1997, appellant stopped at Kevin Back's house to inform Back that appellant's girlfriend had stolen all of appellant's money from him and he was leaving the area for Florida. Appellant and Back were casual acquaintances, and testimony at trial revealed that appellant had been in Back's home on previous occasions.
At approximately 1:00 a.m. on August 31, 1997, Back went to bed. Back testified that he left his wallet in the pocket of his trousers on the bedroom floor. He was awaken by his wife at approximately 10:00 a.m. when she noticed that a brass vase filled with spare change was missing. Back began to inspect his home and discovered his wallet in the basement along with the empty brass vase. Approximately $100 was missing from Back's wallet, while approximately $150 in change was missing from the brass vase. Among other things, Back also discovered that his car, which was parked in the driveway, had been broken into and that his car stereo was missing. Back immediately notified the Middletown Police Department.
Officer Rogers testified that he responded to Back's telephone call. Upon arrival at the Back residence, Rogers determined that the point of entry for the burglary was a basement window. Rogers found broken glass along with a ball peen hammer, a screwdriver, electrical tape, empty beer cans, and a cardboard Zima container just outside Back's broken basement window. Rogers testified that he then began to canvas local convenience stores in the area in order to determine if any of these items had been recently purchased by a single individual. As a result of his efforts, Rogers was provided with a surveillance videotape from the Gas America in Middletown. The video tape revealed that at approximately 2:00 a.m. on August 31, 1997, a man entered the Gas America carrying a cardboard six-pack container and purchased both cigarettes and electrical tape.
Detective McGill of the Middletown Police Department testified that he also responded to Back's telephone call. McGill photographed the scene and dusted for fingerprints. McGill was successful in lifting fingerprints from the shards of broken glass from the basement window. Deputy Ron Huston, a latent fingerprint examiner of the Miami Valley Crime lab, testified that the fingerprints lifted from the broken glass matched those of appellant. McGill also testified that electrical tape is commonly used to tape windows before they are shattered thereby minimizing the sound of breaking glass.
Wilma Haven, the store clerk who was working at the Gas America at the time of the electrical tape purchase, identified the store surveillance videotape. She further testified that she specifically remembered the purchase because it was unusual for several reasons. First, she recalled that the man who entered the store was carrying a cardboard Zima container. Second, Haven recalled that the purchase took place after 1:00 a.m., the legal time for selling alcohol. Finally, Haven remembered the individual who had purchased the roll of electrical tape because it was the only roll of electrical tape she has ever sold during her employment with Gas America. Haven testified that she stood approximately three feet from the individual while he paid for his purchase, and that as a result she had a good opportunity to look him in the eye.
Rogers testified that after he obtained the videotape, he shared it with McGill. McGill then went to Haven's home to interview her about the early morning hours of August 31, 1997. McGill and Haven watched the videotape together, and then McGill provided her with a photographic lineup of possible suspects. Have identified appellant as the individual who had purchased the roll of electrical tape from the photographic lineup. Prior to trial, appellant moved to suppress Haven's identification, arguing that the identification had been tainted by an unduly suggestive lineup. However, on January 30, 1998, the trial court overruled appellant's motion. During the trial, Haven positively identified appellant as the person who had come into the Gas America, carrying a cardboard six-pack container, to purchase the roll of electrical tape.
On March 5, 1998, a jury convicted appellant of burglary. On May 1, 1998, appellant was sentenced to four years in prison. On appeal, appellant presents two assignments of error.
In his first assignment of error, appellant contends:
 THE STATE IMPROPERLY INJECTED ITS PERSONAL OPINION REGARDING THE VERACITY OF WITNESSES AND THE QUALITY OF THE EVIDENCE.
In his first assignment of error, appellant argues that the prosecutor, in closing arguments, improperly injected his personal opinion regarding the veracity of Wilma Haven. In his brief, appellant specifically recites two portions of the prosecutor's final argument as support for his claim. First, appellant recites the prosecutor's statement about the quality of the videotape:
 I don't know. Maybe they'll say it wasn't him that broke into this house, but I'm telling you, that looks like a Zima container to me. Looks just like the one that was in the store.
Appellant then recites the following statement by the prosecutor:
 And when they're testifying, if they testify in a way that you think to yourself, "OK, maybe this person hasn't had a lot of education. Maybe they're not the most polished person. But I believe they're telling me the truth because of what they're saying, how they're saying it, and the way they respond to the question." And if you felt in your heart this woman's in here telling us the truth, you should rely on that, because she was. She didn't have an ax to grind with anybody.
Appellant contends that in these two statements the prosecutor improperly interjected his own personal opinion regarding the truthfulness of Haven and the accuracy of her observation regarding the cardboard Zima container. More specifically, appellant argues that these statements had the effect of improperly bolstering Haven's credibility with the jury.
Because these statements were not objected to at trial, we note that any objection to them is waived unless the error rises to the level of "plain error." State v. Waddy (1992), 63 Ohio St.3d 424,437. Appellant concedes this point in his brief, but argues that the prosecutor's statements do, in fact, rise to the level of plain error.
Under a plain error analysis, we must determine whether the substantial rights of the accused were so severely affected as to undermine the fairness of the guilt determining process. Crim.R. 52(B);[1] State v. Swanson (1984), 16 Ohio App.3d 375, 377. It must appear that, but for the error, the result of the trial clearly would have been otherwise, and that to not correct the error would be a clear miscarriage of justice.
The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of the accused. Statev. White (1998), 82 Ohio St.3d 16, 22 rehearing/reconsideration denied (1998), 82 Ohio St.3d 1469, 1470. Even if a prosecutor's statements in closing argument are improper, reversal based upon those statements is warranted "only if it `permeates the entire atmosphere of the trial.'" State v. Tumbleson (1995), 105 Ohio App.3d 693,699, quoting United States v. Warner (C.A.6, 1992),955 F.2d 441, 456, certiorari denied (1992), 505 U.S. 1227,112 S.Ct. 3050. In reviewing the record, it must be remembered that both the defense and the prosecution are given wide latitude in their arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." Tumbleson,105 Ohio App.3d at 699, quoting State v. Lott (1990), 51 Ohio St.3d 160,165, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591.
In the instant matter, the prosecutor indicated in reference to the video tape that "that looks like a Zima container to me," and he stated that if the jurors felt Haven was telling them the truth, then they should rely on that feeling "because she [Haven] was" indeed telling the truth.
We note that prosecutors "may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by the admissible evidence."Lott, 51 Ohio St.3d at 166. However, upon review we find that the prosecutor's statements neither address appellant's guilt nor allude to inadmissible evidence. In fact, in the case before us, we cannot say that the prosecutor's statements, as a whole, were so improper that they prejudiced appellant's rights, or so corrupted the trial, as to preclude a fair verdict. Furthermore, we cannot say that absent these comments appellant would have been found not guilty of the crime of burglary. A thorough review of the record reveals that, even in the absence of the prosecutor's statements, there remains substantial evidence of appellant's guilt; specifically, appellant's fingerprints which were lifted from the shards of broken glass from the basement window. Accordingly, the prosecutor's comments do not rise to the level of plain error. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS THE IDENTIFICATION TESTIMONY.
In his second assignment of error, appellant argues that the trial court erred in overruling his motion to suppress Haven's identification testimony. Appellant reasons that the photographic lineup from which Haven identified him was unduly suggestive, as it occurred just after she viewed the surveillance videotape. Appellant further argues that as a consequence of the suggestive photographic lineup, Haven's in-court identification of appellant is likewise tainted. We disagree.
Evaluation of the admissibility of identification testimony involves a two-step process: First, it is necessary to determine whether the pretrial identification procedure used by the authorities was unduly suggestive; second, if it was unduly suggestive, the court must then determine whether, under a totality of the circumstances, the identification was reliable despite the suggestive identification procedures. State v. Jordan (Mar. 13, 1995), Clinton App. No. CA94-02-004, unreported, at 4, citing Mason v.Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243. An out-of-court identification which is unduly suggestive taints and renders inadmissible an in-court identification by a witness because of the substantial likelihood of misidentification. Neil v. Biggers
(1972), 409 U.S. 188, 93 S.Ct. 375.
Reliability is the linchpin in determining the admissibility of a pretrial identification since the identification's reliability is balanced against the danger of its suggestive nature. Mason, 432 U.S. at 114, 97 S.Ct. at 2253. The United States Supreme Court has set forth a series of factors to be considered in determining whether, under a totality of the circumstances, an identification is reliable. The factors to be considered include: 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty demonstrated by the witness, and 5) the length of time between the crime and the identification. Neil, 409 U.S. at 198, 93 S.Ct. at 382. We must examine the reliability of an identification procedure, and its possible suggestive nature under a consideration of the "totality of the circumstances" analysis. State v. Fanning (1982), 1 Ohio St.3d 19,20.
Upon a careful review of the record, we are satisfied that the photographic array and the procedure employed by McGill in this case was not unduly suggestive. The array of photographs McGill presented to Haven consisted of six photographs of white males. All of the subjects had physical features similar to those of appellant. There was nothing about the photographic array or the procedure which encouraged Haven to identify appellant over the other suspects presented. However, assuming arguendo that presenting Haven with the six photographs immediately following her viewing of the surveillance videotape was unduly suggestive, we find that under the totality of the circumstances, Haven's identification of appellant is reliable. Specifically, Haven testified that she had a good opportunity to view appellant as he purchased the roll of electrical tape. She further testified that appellant was memorable because he entered the store carrying his own card board six-pack container past the legal time for selling alcohol, and because he purchased an item she had never sold before. We find that such circumstances would make Haven especially attentive to appellant and his appearance. Finally, we note that the length of time between Haven's opportunity to view appellant as he made his purchase and the photographic lineup was short, just a few days.
Accordingly, examining this matter under the totality of the circumstances, we find nothing in the record to suggest that Haven's identification of appellant was not reliable. Nor do we find that the method employed by the police in this matter was so unduly suggestive that it created a risk of misidentification. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] 1. Crim.R. 52(B) states:
 Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.