DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Thomas E. Craft appeals from his conviction for murder with a firearm specification. Appellant argues that his conviction is against the manifest weight of the evidence. Because the record shows that substantial evidence supports his conviction, we disagree. Appellant also argues that the trial court erred when it failed to ensure that a forensic evaluator performed a sanity evaluation. In our review, because the record demonstrates that Appellant withdrew his not guilty by reason of insanity plea prior to trial, we disagree. Finally, Appellant asserts that he received ineffective assistance of counsel. We find Appellant fails to demonstrate deficient performance and prejudice, we disagree. Accordingly, we affirm the trial court's judgment.
 {¶ 2} A Vinton County Grand Jury indicted Appellant on one count of murder in violation of R.C. 2903.02(A), with a firearm specification in violation of R.C. 2941.145. Appellant filed written pleas of not guilty and not guilty by reason of insanity. The trial court ordered evaluations to determine whether Appellant was (1) competent to stand trial and (2) sane at the time of the crime.
 {¶ 3} The Shawnee Forensic Center performed the competency evaluation. Initially, the examiner filed a report finding Appellant incompetent to stand trial. Because the evaluation found Appellant incompetent, the examiner did not perform a sanity evaluation. At the competency hearing the examiner changed his finding and concluded that Appellant was competent to stand trial. The examiner testified that Appellant successfully faked incompetency during the evaluation. According to the examiner, after he reviewed: (1) 26 taped phone calls Appellant made from jail; (2) case records from Tri-County Mental Health; and (3) Appellant's IQ test results, he determined that Appellant was competent to stand trial.
 {¶ 4} Before voir dire, Appellant's counsel requested a bench conference and informed the court that Appellant wished to withdraw his plea of not guilty by reason of insanity. Defense counsel stated: "With regard to the not guilty by reason of insanity plea I've discussed it with my client and we are withdrawing that at this time. We will present no evidence on that issue." The trial court ordered the plea withdrawn.
 {¶ 5} At trial, the State presented evidence that Appellant intentionally caused Nicholas Wheeler's death by firing one shot into the victim's chest. Testimony revealed that Appellant and the victim had a contentious history. On September 13, 2003, Appellant arrived at Little John's Carryout. After making a purchase, Appellant saw his mother, Debra Cupp, in the store and went to speak with her. Then, the victim arrived at the store, made a purchase, spoke with a clerk, and left the store. Appellant followed the victim out of the store, removed his shirt, and initiated an altercation. A store clerk intervened in the fight and Appellant pulled out a gun. The altercation continued, but outside of witness' view. A shot was fired and Appellant fled the parking lot. The victim, shot in the chest, stumbled, stated "he shot me," and fell to the ground where he died. Appellant's mother, who was involved in the altercation, remained at the scene and claimed she killed the victim. Later, Appellant called the Sheriff's office, confessed to the shooting, and turned himself in.
 {¶ 6} Sergeant Carolyn Brown testified that she received and recorded Appellant's phone call. She identified a taped recording of the call, which was played for the jury. On the tape, Appellant claims that the victim attacked his mother and admits to shooting the victim.
 {¶ 7} Kyle Seymour testified he witnessed the altercation between Appellant and the victim. Seymour, who worked at Little John's Carryout, spoke to the victim at the store. The victim was upset that Appellant was in the store. Seymour advised the victim to stay calm and leave. As the victim left the store, Appellant followed him out, removed his shirt, and initiated an altercation. Seymour went outside to intervene. He observed the victim getting into his car and Appellant chasing after the victim with a gun. The Appellant aimed the gun at Seymour and the victim, and then dropped the gun as he attempted to pull the trigger. Seymour fled to the store, where he called the police. He then heard a gun shot and ran back outside. He observed the victim lying on the ground, unresponsive. He heard Appellant's mom scream "I'm the one that shot him!"
 {¶ 8} Tyler Bowman witnessed the altercation. He testified that he saw Appellant aim a gun at the victim and then drop the gun. After the gun fell, both men continued to argue. The victim hit Appellant and Appellant's mother intervened and tried to hit the victim. Bowman witnessed the victim shove Appellant's mother. Then all three parties went to the far side of a parked van, out of his view. He heard the gun shot and then saw the victim lying on the ground. He heard Appellant's mother admit she shot the victim.
 {¶ 9} Bradley Ritterbeck also witnessed the altercation. He saw Appellant and the victim fighting and then heard a gun shot. Ritterbeck observed the victim come out from behind the van, holding his stomach, and stating that he was shot. Specifically, Ritterbeck heard the victim say, "he shot me," before falling to the ground. He also heard Appellant's mother state that she shot the victim.
 {¶ 10} Sheriff David Hickey testified that he was dispatched to the scene, where he found the victim lying on the ground while paramedics worked on him. Hickey received a radio dispatch telling him that Appellant had called and confessed to the shooting. He went to the Craft residence, but Appellant had already left. Later, he located Appellant in a car on the Pike/Jackson County Line. He took Appellant into custody. On the day of the preliminary hearing, Appellant initiated a conversation with the sheriff, in which he again confessed to the shooting. Sheriff Hickey testified Appellant made the statement in the course of a voluntary and casual conversation initiated by Appellant. The sheriff admitted that his investigation revealed that Appellant's mother, who was terminally ill,[1] also confessed to the shooting. He acknowledged that it was possible Appellant confessed to protect his dying mother, but ultimately concluded that Appellant was the shooter and his mother confessed to protect him.
 {¶ 11} The State also proffered testimony from Nicholas Moore, Loretta Jenkins (nka Bobo), and Dorothy Emma Dean. Moore testified that he saw Appellant at a party before the shooting. Appellant threatened Moore and also stated that the victim was at the "top of his personal kill list." Jenkins, the victim's girlfriend, testified that she was in the parking lot at the time of the shooting. She observed Appellant and the victim fighting, and the Appellant's mother attacking the victim. Jenkins testified that Appellant pulled a gun when the victim tried to return to his car. Appellant's mother attempted to hit the victim in the head with a ladder, which Jenkins then took away from her. As Jenkins turned to hand the ladder to another person, she heard the gun shot. She then heard the victim state, "he shot me," before he fell to the ground. She observed Appellant get into his car, smile at her, and then flee.
 {¶ 12} Dean, a forensic pathologist with the Summit County Medical Examiners Office, performed the victim's autopsy. She testified, with a reasonable degree of medical certainty, that the victim died from a gunshot wound to the torso. According to Dean, the bullet perforated the victim's heart and stopped at his spinal cord.
 {¶ 13} The jury deliberated and returned a guilty verdict. The trial court entered a judgment of conviction and sentenced Appellant to "an indefinite prison term of 15 years to life for the conviction of Murder, and a stated prison term of 3 years for the firearms specification," to be served consecutively for "a total indefinite prison term of 18 years to life."
 {¶ 14} Appellant appeals and raises the following assignments of error:
 {¶ 15} "I. The jury's verdict is against the manifest weight of the evidence. II. The trial court's failure to insist that an evaluation be performed to determine craft's sanity at the time of the shooting constitutes a violation of craft's substantive fourteenth amendment rights as well as analogous rights pursuant to article 1, section 16 of the Ohio Constitution. III. Defense counsel's failure to insist upon a sanity evaluation constituted ineffective assistance of counsel. IV. Craft's trial counsel was ineffective in not moving to suppress craft's uncounseled statement to sheriff david hickey at the time of the Preliminary Hearing. v. Trial Counsel was ineffective for failing to object to statements made by wheeler after he had been shot."
 {¶ 16} In his first assignment of error, Appellant contends that his conviction is against the manifest weight of the evidence. Specifically, Appellant argues that substantial evidence does not support the conviction because: (1) no eyewitnesses observed the shooting; (2) Appellant dropped the gun; (3) Appellant's mother engaged in a physical altercation with the victim and then admitted to the shooting; and (4) Sheriff Hickey admitted that Appellant may have confessed to protect his mother." We note that Appellant does not argue that the greater amount of credible evidence proves he acted in self-defense or in defense of another. Therefore, we decline to address that issue.
 {¶ 17} When determining the weight of the evidence, a reviewing court sits as a "thirteenth juror" and determines whether the greater amount of credible evidence supports the verdict. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. To this end, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175. If the fact finder clearly lost its way, the reviewing court must reverse the conviction and order a new trial. Id. However, if the record contains substantial evidence, upon which a reasonable fact finder could conclude that all the essential elements of the offense were proven beyond a reasonable doubt, the conviction must be affirmed. State v. Getsy,84 Ohio St.3d 180, 193-194, 1998-Ohio-533; State v. Eley (1978),56 Ohio St.2d 169, syllabus. While a manifest weight argument permits an appellate court to weigh the evidence, the court is guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 18} We find that substantial evidence supports the jury's verdict. The State presented evidence that Appellant confessed to the crime twice: once in a phone call to the Sheriff's department and once in a voluntary conversation with Sheriff Hickey. Two witnesses testified that the victim stated "he shot me" immediately before dying, thus eliminating Appellant's mother as the possible shooter. Appellant also fled from the scene, and, after he confessed, fled his home to avoid the police. Finally, even though testimony indicated that Appellant dropped the gun while attempting to pull the trigger, it is clear that someone subsequently retrieved the gun and used it to shoot the victim. It is reasonable to infer, based on Appellant's confessions and other evidence, that Appellant retrieved the gun and used it to murder the victim. Therefore, we conclude that the jury did not lose its way and create a manifest miscarriage of justice.
 {¶ 19} We acknowledge Appellant's argument that he may have confessed to avoid punishment for his terminally ill mother. However, it is just as reasonable to infer that his mother, knowing she was terminally ill, confessed to protect her son. Given the evidence that Appellant initiated the altercation, threatened to kill the victim earlier that evening, fled the scene of the shooting, and then confessed twice to the crime, we cannot find that the jury clearly lost its way in reaching its verdict. See State v. Miller (July 27, 1999), Ross App. No. 98CA2467 (holding, in part, that appellant's attempt to flee provided circumstantial evidence upon which the trier of fact could conclude that he committed the alleged crime.) Accordingly, we overrule Appellant's first assignment of error.
 {¶ 20} In his second assignment of error, Appellant argues that the trial court erred when it failed to enforce its order for a sanity evaluation. Appellant contends that this evaluation was necessary to his defense. The State asserts that any error was harmless because Appellant withdrew his insanity plea before trial. As proof, the State requested that this court supplement the record with a transcript from the voir dire proceeding.
 {¶ 21} After reviewing the transcript, we find that Appellant withdrew his insanity plea before trial. Therefore, any error was harmless. Because Appellant does not argue that withdrawal of this plea was involuntary, unintelligent, or unknowing, we decline to address that issue. Accordingly, we overrule Appellant's second assignment of error.
 {¶ 22} In his third through fifth assignments of error, Appellant argues that he received ineffective assistance of counsel. Appellant contends that his trial counsel performed deficiently, and prejudiced his defense, by failing to: (1) object to the trial court's failure to ensure that the examiner performed a sanity evaluation; (2) file a motion to suppress his uncounseled statements to Sheriff Hickey; and (3) object to the victim's dying declaration.
 {¶ 23} An appellant is entitled to a reversal of his conviction because of ineffective assistance of counsel if he demonstrates that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. State v.Smith (2000), 89 Ohio St.3d 323, 327, citing Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989),42 Ohio St.3d 136, 142. For the deficiency prong, the appellant must show that trial counsel's performance fell below an objective standard of reasonableness. Bradley. For the prejudice prong, the appellant must demonstrate that, but for counsel's errors, the results of the trial would have been different. State v. White (1998), 82 Ohio St.3d 16, 23. If an appellant fails to meet either one of the two prongs, his assignment of error fails. Strickland; Bradley.
 {¶ 24} Appellant argues that his trial counsel acted deficiently and prejudiced his defense by failing to object to the omission of the sanity evaluation. We disagree. First, trial counsel did not act deficiently by failing to object because Appellant withdrew his insanity plea before trial. Second, even if counsel acted deficiently, the failure to object did not prejudice the defense because Appellant withdrew the insanity plea and did not present any evidence to prove insanity. Accordingly, we overrule Appellant's third assignment of error.
 {¶ 25} Appellant also argues that trial counsel acted deficiently, and prejudiced his defense, by failing to file a motion to suppress his uncounseled statements to Sheriff Hickey. We disagree because Appellant cannot prove that the failure to object prejudiced his defense. To prove that failure to file a particular motion constituted ineffective assistance of counsel, Appellant must prove that the motion had a reasonable probability of success. State v. Adkins, ___ N.E.2d ___, 2005-Ohio-2577, ¶ 14
(citations omitted.) Appellant has not presented any evidence that his statement was involuntary or made during an interrogation. Accordingly, we overrule Appellant's fourth assignment of error.
 {¶ 26} Finally, Appellant argues that trial counsel performed deficiently by failing to object to testimony that the victim stated, "he shot me," before dying. Appellant asserts that the statement was inadmissible because the State failed to lay a proper foundation to show the statement was a dying declaration pursuant to Evid.R. 804(B)(2). We disagree.
 {¶ 27} Evid.R. 801(C) defines hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 provides that hearsay evidence is generally inadmissible. Pursuant to Evid.R. 804(B)(2), hearsay statements "made by a declarant, while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death", are admissible if the declarant is unavailable. Evid.R. 804(A)(4) provides that a declarant is unavailable if he "is unable to be present or to testify at the hearing because of death * * *."
 {¶ 28} Appellant argues that the State failed to show that the victim made the statement while under a sense of impending death. According to Appellant, the fact that the victim was still standing while making the declaration shows he had no sense of impending death.
 {¶ 29} We find that even if trial counsel acted deficiently, that deficient performance did not prejudice the defense because the statement was admissible as a dying declaration. While we note that it is generally impossible to exactly determine whether a declarant sensed his imminent death, we believe that the evidence in this case supports such a conclusion. The declarant suffered a bullet wound to his chest, which perforated his heart. Immediately after the statement, and within moments of being shot, the declarant fell to the ground and expired. This is sufficient to meet the requirements of Evid.R. 804(B)(2). An attorney's failure to object to testimony that is otherwise admissible does not constitute ineffective assistance. State v.Miller (Oct. 14, 1993), Meigs App. No. 92CA496. Therefore, the Appellant cannot demonstrate that, but for counsel's deficient performance, the results of the trial would have been different. Accordingly, we overrule Appellant's fifth and final assignment of error.
 {¶ 30} In conclusion, because we find that Appellant's five assignments of error are without merit, we affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that costs herein be taxed to the appellant.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Kline, J. Concur in Judgment and Opinion.
[1] Debra Cupp died in November 2003.