[Cite as *State v. Leach*, 2018-Ohio-3554.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

      Plaintiff-Appellee

-vs-

JONATHAN LEACH

      Defendant-Appellant

JUDGES:
Hon. John W. Wise, P. J.
Hon. W. Scott Gwin, J.
Hon. Earle E. Wise, Jr., J.

Case No. 18 CA 00004


O P I N I O N


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 17 CR 00574


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      September 5, 2018


APPEARANCES:

For Plaintiff-Appellee

WILLIAM C. HAYES
PROSECUTING ATTORNEY
PAULA M. SAWYERS
ASSISTANT PROSECUTOR
20 South Second Street, Fourth Floor
Newark, Ohio 43055

For Defendant-Appellant

KEVIN J. GALL
BURKETT & SANDERSON, INC.
73 North Sixth Street
Newark, Ohio 43055

*Wise, John, P. J.*

{¶1}   Defendant-Appellant Jonathan Leach appeals his convictions on six counts of gross sexual imposition entered in the Licking County Court of Common Pleas following a jury trial.

{¶2}   Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶3}   The relevant facts and procedural history as set forth in Appellant's brief and accepted by the State of Ohio are as follows.

{¶4}   Appellant Jonathan Leach met his future wife, Breanna, in September, 2009. The two moved in together in March, 2010, and were married in May, 2013. (T. at 203, 217). Prior to meeting Appellant, Breanna had three children from a previous marriage, all daughters. (T. at 192). During the marriage, Appellant and Breanna had one child of their own, a boy.

{¶5}   Breanna lived in a three-bedroom townhouse. (T. at 205). After Appellant moved in, all three girls slept in one bedroom. (T. at 209). Appellant also had children from a previous marriage, a son and a daughter, who would also stay at the apartment on weekends when it was his turn to have them. (T. at 210, 747-48).

{¶6}   On September 15, 2016, Appellant Jonathan Leach was indicted on twelve (12) counts of Gross Sexual Imposition, all involving his step-daughters. (*See* Case No. 2016-CR-00492). Of these counts, five counts alleged violations of R.C. §2907.05(A)(1), felonies of the fourth degree, five counts alleged violations of R.C. §2907.05(A)(5), also felonies of the fourth degree, and two counts alleged violations of R.C. §2907.05(A)(4), felonies of the third degree.

**{¶7}** On March 10, 2017, Case No. 2016-CR-00492 was dismissed.

**{¶8}** On June 22, 2017, a new indictment was filed in the Licking County Common Pleas Court, in Case No. 2017-CR-00574. This new indictment contained twenty-four (24) felony charges: three counts of gross sexual imposition, in violation of R.C. §2907.05(A)(4), felonies of the third degree; nine (9) counts of gross sexual imposition, in violation of R.C. §2907.05(A)(1), felonies of the fourth degree; nine (9) counts of gross sexual imposition, in violation of R.C. §2905.07(A)(5), felonies of the fourth degree, and three (3) counts of menacing by stalking, in violation of R.C. §2903.211(A)(1)(B)(2)(d), felonies of the fourth degree.

**{¶9}** On September 21, 2017, the Delaware County Prosecutor was appointed as special prosecutor in this matter.

**{¶10}** On October 11, 2017, the trial court judge ordered that all discovery and court filings in case no. 16-CR-00492 be transferred to case no. 17-CR-00574.

**{¶11}** On November 6, 2017, this matter proceeded to a Jury Trial. At trial, the jury heard the following testimony:

<u>DAUGHTER 1</u>

**{¶12}** "Daughter 1", who was sixteen (16) years old at the time of trial, testified that in the early morning hours of August 19, 2016, she woke up to the Appellant's hand touching her thigh. (T. at 424). She testified that she told him to stop and he complied. (T. at 425). Her sister, "Daughter 2", was awake at the time and she discussed the incident with her and then went back to sleep. (T. at 428).

**{¶13}** The next morning, she told her mother what had happened. (T. at 429). "Daughter 1" then went to school and called her biological father to pick her up. (T. at

430). "Daughter 1" informed her father of the alleged incident and she was taken to the police station where she revealed further allegations of similar conduct against Appellant spanning the previous four years. (T. at 431).

{¶14} "Daughter 1" further testified that the very first incident occurred when she was eleven (11) years old. (T. at 433). In that incident, she alleged that Appellant came into her bedroom and touched her breast over her clothes. (*Id.*) The second incident occurred about one year later when she was twelve years old. (T. at 440). During the second incident, Appellant again allegedly touched her breast over her clothes. (T. at 442). She testified that these were the only incidents that occurred in which she was the alleged victim. (T. at 448). However, she did testify that two summers after the second incident with her, she woke up and saw Appellant touching "Daughter 2's" breast. (T. at 444).

## DAUGHTER 2

{¶15} "Daughter 2", who was fifteen (15) years old at the time of trial, testified that on August 19, 2016, she awoke to the sight of a flashlight scanning her and her sisters' bedroom. (T. at 489). She observed Appellant in the room wearing a t-shirt and boxer shorts. (*Id.*) She testified that she witnessed Appellant touch "Daughter 1's" "lower regions," and move her shorts. She then heard "Daughter 1" tell Appellant to "go away" twice, before he complied. (T. at 490). "Daughter 2" testified that Appellant was touching his own penis with his other hand while he was touching "Daughter 1". (T. at 491). After Appellant left the room, "Daughter 2" testified that she waited ten minutes and then woke "Daughter 1" up and told her what she had just witnessed. (*Id.*)

{¶16} "Daughter 2" testified that she was the victim of two alleged sexual assaults in which Appellant was the perpetrator. (T. at 496). She described the first incident

occurring when she was twelve years old, or sometime in 2014 or 2015. (*Id.*) In this incident, she woke up to a bright light being shined in her face, and Appellant touching her breast with his hand. (Id.) She testified that when she caught Appellant doing this, she stated, "go away, Jon." "Daughter 1" informed her afterwards that she had observed this incident. (T. at 498, 500).

**{¶17}** "Daughter 2" testified that she was the victim of one other incident that occurred approximately one week before August 19, 2016. (T. at 501). Similar to the other incidents, she woke up to a bright light being shined in her face, and someone she was very sure was Appellant was touching her breast with his hand. (T. at 501-2).

### "DAUGHTER 3"

**{¶18}** "Daughter 3", who was eleven (11) years old at the time of trial, testified that she was the victim of a single incident in which Appellant touched her chest and butt areas. (T. at 553). This incident occurred in the sisters' bedroom while she was faking sleep in the top bunk. (T. at 552). However, she was not sure when it happened, as she testified she is not "good with remembering." (*Id.*) The incident may have occurred one or two years ago. (*Id.*) "Daughter 3" did not testify to witnessing or being the victim of any other incidents.

### DNA Evidence

**{¶19}** On August 20, 2016, Detective Vanoy of the Newark Police Department interviewed "Daughter 1" and "Daughter 2" with respect to their allegations. (T. at 347). Based upon information given to him regarding the incident that occurred the day prior, Detective Vanoy sent "Daughter 1" back to the apartment on Everett Avenue to collect the shorts she was wearing at the time of the allegation. (T. at 354). "Daughter 1" brought

the shorts to Detective Vanoy in a plastic grocery shopping bag, the shorts were transferred to a paper bag and sent to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing. (T. at 355-7).

{¶20} BCI analyst, William Schepeler, testified that he conducted DNA comparisons of swabs taken from "Daughter 1's" shorts against DNA standards of "Daughter 1" and Appellant. (T. at 623). Appellant was excluded as a contributor of DNA in swabs taken from the interior and exterior front panel of "Daughter 1's" shorts. (T. at 634, 637).

{¶21} Y-STR DNA analysis was also conducted on the interior and exterior swabs of the front panel of "Daughter 1's" shorts. (T. at 646). Schepeler testified that Y-STR DNA testing looks at the Y chromosome to look for male-specific DNA. (T. at 643). Schepeler further testified that Y-STR profiles are not unique to a specific individual, all individuals with shared paternal lineage are expected to have the same Y-STR DNA. (*Id.*) Y-STR analysis on these swabs revealed that Jonathan Leach was included as a contributor. (T. at 648). Schepeler went on to further describe that Appellant was included with a statistic of 1 in 8,621, meaning that it would be expected to find one individual responsible for the DNA out of every 8,621 individuals sampled. (*Id.*) Despite these findings, Schepeler could not say with any degree of scientific certainty that the DNA found belongs to Appellant. (T. at 667).

APPELLANT

{¶22} Appellant took the stand in his own defense and testified that his relationship with his three step-daughters often involved disputes over the girls' lack of effort to keep their room clean. (T. at 766). He further explained that he would look into

their room using the flashlight on his cell phone every night after he returned home from work around 2:00 a.m. (T. at 793, 795-796). Appellant testified to further frustrations with the girls not completing their chores and stated that all three rarely did their own laundry and either he or Breanna would do the household's laundry. (T. at 789-90).

{¶23} Appellant denied ever inappropriately touching any of the girls. (T. at 792).

{¶24} At the close of the State's case, counsel for the defense moved for a Rule 29 Motion for Acquittal as to all counts of the indictment. The trial court found the motion to have merit with respect to Counts Six, Seven, Twelve, and Thirteen, which alleged violations of gross sexual imposition, as well as Counts Twenty-Two, Twenty-Three, and Twenty-Four, which alleged violations of menacing by stalking; a judgement of acquittal was entered as to those seven counts.

{¶25} The remaining counts presented to the jury alleged various violations of gross sexual imposition.

{¶26} After deliberations, the jury found the defendant Not Guilty of Counts One, Two, Three, Four, and Five, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, and Twenty-One.

{¶27} Appellant was found guilty of gross sexual imposition, in violation of R.C. §2907.05(A)(1), in Counts Eight, Ten, and Fourteen. He was also found guilty of gross sexual imposition, in violation of R.C. §2907.05(A)(5), in Counts Nine, Eleven, and Fifteen.

{¶28} On January 8, 2018, at the sentencing hearing, it was agreed upon that Counts Eight and Nine merged for the purposes of sentencing, and the State elected to proceed with sentencing on Count Eight. The parties also agree that Counts Ten and

Eleven merged for the purposes of sentencing, and the State elected to proceed on Count Ten. Counts Fourteen and Fifteen similarly merged for the purposes of sentencing, and the State elected to proceed on Count Fourteen.

**{¶29}** The trial court sentenced Appellant to nine (9) months imprisonment on Counts Eight, Ten, and Fourteen, and it was ordered that the counts be served consecutively, for a total stated prison term of twenty-seven (27) months.

**{¶30}** Appellant now appeals, raising the following assignment of error on appeal:

<u>**ASSIGNMENTS OF ERROR**</u>

**{¶31}** "I. THE DEFENDANT-APPELLANT'S CONVICTIONS FOR GROSS SEXUAL IMPOSITION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶32}** "II. THE STATE OF OHIO COMMITTED PROSECUTORIAL MISCONDUCT DURING ITS CLOSING ARGUMENT IN VIOLATION OF HIS DUE PROCESS RIGHTS AND DEPRIVING HIM OF A FAIR TRIAL.

**{¶33}** "III. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO OBJECT TO IMPROPER COMMENTS ON THE PART OF THE PROSECUTION DURING CLOSING ARGUMENT THAT AMOUNTED TO PROSECUTORIAL MISCONDUCT."

**I.**

**{¶34}** In his first assignment of error, Appellant argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶35}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also*, *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶36} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

{¶37} In the case *sub judice*, Appellant was convicted of three counts of gross sexual imposition, in violation of R.C. §2907.05(A)(1) and three counts of gross sexual imposition in violation of R.C. §2907.05(A)(5), which provides as follows:

{¶38} R.C. §2907.05 Gross Sexual Imposition

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

***

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

**{¶39}** "Sexual contact" is defined in R.C. §2907.01(B) as:

[A]ny touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

**{¶40}** Appellant was convicted of counts of gross sexual imposition related to "Daughter 1" and "Daughter 2". At trial, as set forth above, the jury heard testimony from both "Daughter 1" and "Daughter 2" with regard to the actions of Appellant. (T. at 421-428; 444-447; 486-504). Each testified as to what happened to them and their knowledge of what happened to the other sister. *Id.* They also testified as to telling their mother what had occurred. (T. at 429). Additionally, the jury heard from Mr. Schepeler, the forensic scientist, that Appellant's Y-STR DNA was found on the clothes belonging to "Daughter 1". (T. at 623-624, 638, 648).

**{¶41}** The testimony of "Daughter 1" and "Daughter 2" alone was sufficient, if believed by the jury, to support the six (6) convictions of gross sexual imposition.

**{¶42}** Based on the testimony and evidence presented to the jury, we do not find the jury lost its way in finding Appellant guilty, and the judgment is not against the manifest weight of the evidence.

**{¶43}** Appellant's first assignment of error is overruled.

## II.

**{¶44}** In his second assignment of error, Appellant argues that the State of Ohio committed prosecutorial misconduct during its closing argument. We disagree.

**{¶45}** The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Appellant of a fair trial based on the entire record. *Lott, supra*, 51 Ohio St.3d at 166, 555 N.E.2d 293.

**{¶46}** A prosecutor's remarks constitute misconduct if remarks were improper and if the remarks prejudicially affected an accused's substantial rights. *State v. Williams*, 99 Ohio St.3d 439, 793 N.E.2d 446, 2003–Ohio–4164. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the Appellant of a fair trial based on the entire record. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. The touchstone of analysis is the "fairness of the trial, not the culpability of the prosecutor." *State v. Gapen*, 104 Ohio St.3d 358, 819 N.E.2d 1047, 2004–Ohio–

6548. The record must be viewed in its entirety to determine whether the allegedly improper remarks were prejudicial. *State v. Treesh* (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.

**{¶47}** Appellant argues that the following statements made by the prosecutor, during closing argument, were improper:

> Now, the picture should be clear at this point in time, ladies and gentlemen, that the Defendant sexually assaulted his stepdaughters. He did so over the course of the past several years and I'd like to start by talking to you just briefly about these photographs that the Defense keeps showing you, and the inference that they want you to make that somehow their happiness is indicative that this didn't happen. That's nonsense. These pictures are disingenuous, at best, fraudulent is probably the more accurate term. (T. at 817).

> ***

> Now, ladies and gentlemen, I submit to you that the reason they did that is because that's what happened. There's no other reason for them to be sitting in that chair. You were given no reason why those girls would be in here and decide they're going to concoct this huge story. That they're going to come in here and say, oh, you know, this guy did this, why, because they were getting yelled at, because they didn't do their chores. Ladies and gentlemen, what sense does that make? They're in here telling you about what the man did to them over the course of years because he yelled at

them for not washing dishes. Ladies, and gentlemen, that's preposterous, that's ridiculous. (T. at 851-852).

***

Ladies and gentlemen, hold us to our burden, reasonable doubt, beyond a reasonable doubt, and what you'll see again when the Judge reads that language is it's reason and common sense. Ask yourself, ladies and gentlemen, who do you believe, the Defendant who came up here and just told you these bad things that these kids did, but gave you no explanation as to why these girls are sitting in the chair. Did that make any sense? Did any of that have to do with why you are all here today and here over the last couple of days? No. Use your reason and common sense and ask yourself when judging the credibility of those girls why they're in that chair, how they reacted while they were in that chair, how they answered these questions, and, ladies and gentlemen, it is beyond reason, beyond common sense that they sat in that chair and told you what that man did to them because that's exactly what happened. (T. at 855-856).

**{¶48}** Initially, we note appellant did not object to the claimed misconduct at trial. If trial counsel fails to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. White,* 82 Ohio St.3d 16, 22, 1998–Ohio–363, 693 N.E.2d 772 (1998), citing *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).

**{¶49}** We therefore review Appellant's allegations under the plain-error standard. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be

noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn,* 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales,* 10 Dist. Franklin Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶ 19. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶50}** Upon review, with regard to the statements made in reference to the photographs Defendant had admitted as exhibits, we find that the State was challenging the picture of a perfect, happy home which defense counsel was trying to paint by showing the photographs of the girls smiling with the family, not the actual photographs themselves. The State then went on to explain that such a photograph depicts only a moment in time, and cannot show the whole story. (T. at 818). In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *Lott, supra*, 51 Ohio St.3d at 165. We find the statement above a fair comment on the evidence.

**{¶51}** In the other two challenged statements, we do not find the prosecutor's statements to be improper because he did not shift the burden of proof to Appellant, and these statements did not deprive Appellant of a fair trial. Read in context of the

surrounding argument, it is clear that the State is asking the jury to evaluate the credibility of the witnesses. The State asks the jury to consider the testimony of the victims and the Appellant and use their common sense. Further, the State tells the jury to "hold us to our burden, reasonable doubt, beyond a reasonable doubt".

**{¶52}** Moreover, Appellant cannot demonstrate, even assuming *arguendo* the cited statements were improper, "but for" these statements he would not have been convicted of the crimes.

**{¶53}** We find Appellant was not denied a fair trial due to prosecutorial misconduct

**{¶54}** Appellant's second assignment of error is overruled.

**III.**

**{¶55}** In his third assignment of error, Appellant maintains he was denied the effective assistance of trial counsel due to counsel's failure to object to the prosecutorial statements set forth in the second assigned error. We disagree.

**{¶56}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

**{¶57}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the

same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶58}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

**{¶59}** As stated in our analysis in Appellant's second assignment of error, we find the prosecutor's closing argument was not objectionable.  In the context of the entire trial, we find defense trial counsel was not deficient in failing to object during closing argument. Even had the argument been objectionable, counsel may have deliberately chosen not to object to avoid drawing the jury's attention to the comments. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, ¶101. Moreover, the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. *State v. Crawford,* 5th Dist. Richland No. 07 CA 116, 2008–Ohio–6260, ¶72, appeal not allowed, 123 Ohio St.3d 1474, 2009–Ohio–5704, 915 N.E.2d 1255, citing *State v. Fears,* 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999).

**{¶60}** Further, we find no reasonable probability the outcome of the trial would have been different had such objections been raised. *State v. Scott*, 5th Dist. Richland No. 11CA80, 2012–Ohio–3482, ¶66, appeal not allowed, 133 Ohio St.3d 1491, 2012–Ohio–5459, 978 N.E.2d 910, citing *State v. Graber,* 5th Dist. Stark No. 2002CA00014,

2003–Ohio–137, ¶154, appeal not allowed, 101 Ohio St.3d 1466, 2004–Ohio–819, 804 N.E.2d 40.

**{¶61}** Appellant third assignment of error is overruled.

**{¶62}** Accordingly, the judgment of the Licking County Common Pleas Court is affirmed.

By: Wise, John, P. J.

Gwin, J., and

Wise, Earle, J., concur.

JWW/d 0822